# Fahnestock's Estate.

*Will—Gift of income to wife—Timber and coal lands.*

Where a testator by his will gives his wife the rents and income of his real estate until the same is sold, and directs that all of his real estate shall be sold within a specified period of years, the wife is entitled to income arising from a portion of the lands by the sale of timber and leas-· ing of coal rights until such portion is sold, it appearing that the testator knew that the only income which could be derived from such lands was from the sale of timber and coal rights.

Argued Nov. 12, 1902.    Appeal, No. 113, Oct. T., 1902, by William H. Keller, from decree of O. C. Lancaster Co., March T., 1902, No. 87, dismissing exceptions to report of auditor in estate of R. E. Fahnestock.    Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Exceptions to report of auditor, William R. Brinton, Esq.

The auditor reported, inter alia, as follows :

The sole question arising from your auditor is a claim made by Mrs. Elizabeth Fahnestock, the widow of decedent, to twenty payments made to the executors by the trustees of the West Virginia lands, in which the decedent had an interest.    Said dividends being numbers one to twenty, and appearing to have been received by the executors in the second, third and fourth accounts, except dividends numbers nineteen and twenty which have been received since the filing of the fourth account, and with which accountants ask that they be surcharged less their commissions.    Each of these dividends amounts to $56.10, and the total amount of the twenty dividends is $1,122, and, deducting the five per cent commissions of the accountants from this amount, there is now in the accountant's hands the sum of $1,065.90.    This amount Mrs. Elizabeth Fahnestock, the widow of decedent, claims should be paid to her as income, derived from the real estate of decedent in West Virginia.

Mr. Fahnestock provided as follows in section five of his will :

" Fifth. I order and direct my executors to sell all my other

real estate of which I may die seized, or am in any way entitled to, and I do hereby give and grant unto my executors full power and authority to grant, bargain, sell and to convey the same, by good and sufficient deeds to the purchaser or purchasers thereof. They are to use their discretion in selling, always having in view the best interests of my estate. They shall have a period of five years from my death to dispose of the same, except my interests in West Virginia, which they may have a period of ten years to dispose of in or sell whenever they deem it advantageous to my estate. I order and direct that if it is desired by the purchaser or purchasers of my mansion house on North Duke Street, that so much of the purchase money as they may elect, not exceeding the one half, shall remain charged thereon during the lifetime of my wife, at the rate of five per cent interest per annum, fully protected by insurance against loss by fire. All the rents and incomes of my real estate directed to be sold (until sold and conveyed) I give and bequeath to my wife, she to pay all the taxes and interest on liens, if any, except the taxes of my residence and lands in West Virginia, which are to be paid out of rents and incomes of East King Street property. If my personal property (not specifically bequeathed) shall not be sufficient to pay all my debts, then so much as may be necessary to pay the same shall be deducted from the proceeds of the sale of real estate directed to be sold."

Testator gives the rents and incomes of his real estate, including the West Virginia lands to his wife, and further directs that she shall not pay the taxes on the West Virginia lands, which taxes are to be paid out of another portion of his estate.

The single question arises, Does the said sum of $1,065.90, being the net amount of the twenty dividends upon the West Virginia lands now in the hands of the executors, pass to Mrs. Elizabeth Fahnestock under testator's devise to her of all the rents and incomes of his real estate, or is it properly a part of the principal or corpus of the estate?

Mr. Return E. Fahnestock acquired his interest in these lands in the year 1865; Michael Bouvier and wife by their indenture dated January 7, 1865, and recorded in Wyoming county, in the state of West Virginia, in deed book No. 3, page 227, and in McDowell county in the same state, in deed

book 1, page 26, conveyed the said lands consisting of 36,750 acres to Jonathan Patterson, Jr., Richard G. Ridgway and William G. Boulton, as trustees, in trust for the owners of said property as appear in exhibit marked "W. R. B., 1." The valuation of the tract was $56,000 divided into fifty-six shares of $1,000 each. Mr. Fahnestock owned a one-fifty-sixth interest in said lands, which were known as the Lasher tract, and the valuation of the same was $1,000 at that time. After considerable difficulty with squatters and after considerable litigation the titles to this tract were perfected, and the title to this whole tract is now in George F. Lasher, Charles S. Whelen and John Wagner, as trustees. These lands yielded no incomes up to about the time of Mr. Fahnestock's death, but timber leases were made shortly before his death, and he knew of the probable income from these lands from the timber leases. Your auditor also finds that the general character of these lands is mountainous and rocky and that crops cannot be raised, nor do they have any other source of income except what may be derived from timber and coal operations. Outside of the timber and coal they have practically no value, and yield no income. The timber which has already been cut from the tract is only timber exceeding twelve inches in thickness, and what is known as strictly merchantable timber, and there still remains on the tract a large quantity of timber suitable for making poles, props, ties, etc., such as might be used in coal operations. The dividends paid by the trustees, and which formed the subject of this dispute, are derived from the proceeds paid to the trustees on the timber leases. Quite a number of these leases were produced before your auditor and copies have been made and are identified and attached to the notes of audit.

However, the principal value of these lands lies in the deposits of coal, which are now being opened by the trustees; several coal leases have already been made, and several operations have been started last summer. These leases are made at ten cents a ton royalty, at a minimum of 3,000 tons the first year, 5,000 tons the second year and 6,000 tons for each succeeding year up to thirty years, with the privilege for renewal for a further period of thirty years. Several of these leases were produced at the meeting of the audit and copies of the same showing formal parts of the leases are filed with the notes

of audit.    The deposits of coal in these lands, with mining op-
erations of ordinary size, are likely to last and continue for sev-
eral generations, and quite possibly for over a century, accord-
ing to the estimates of the coal deposits testified to before your
auditor.

Testator gives and bequeaths the income and rents from the
West Virginia lands until sold to Mrs. Fahnestock.    The lands
are not susceptible of cultivation and have no means of render-
ing any incomes except from lumber and coal operations.    This
provision of testator's will is meaningless, unless you take the
view of it that it means to give her the income derived from
the lumber and coal operations.    And it seems to the auditor
that this view is especially strengthened by the fact that, at or
before the time when the will was made, operations had been
started under the timber leases, and income from the West Vir-
ginia lands was expected from that source.

Exceptions to the auditor's report in favor of the widow
were dismissed by the court.

*Errors assigned* were in dismissing exceptions to auditor's
report.

*W. H. Keller*, of *Coyle & Keller*, for appellant.

*J. W. Brown*, with him *C. E. Montgomery*, for appellees.

OPINION BY WILLIAM W. PORTER, J., January 20, 1903 :

The answer to the question involved hangs upon the meaning
of a part of the fifth clause of the will of R. E. Fahnestock.
The testator by the terms of a certain deed of trust affecting
real estate in West Virginia, held rights, which he regarded as
interests in land, and treated as such in making his will.    He
knew, as the auditor finds, that the property was timber land
and that measures were being taken by the trustees to make
it yield dividends.    In this knowledge he wrote his will by
which he directs that all his real estate shall be sold by the
executors, in five years from his death, save his "interests in
West Virginia, which they may have a period of ten years to
dispose of in, or sell, whenever they deem it advantageous to
my estate."    He then provides, "all the rents and incomes

of my real estate directed to be sold (until sold and conveyed), I give and bequeath to my wife," etc. This means that the wife is to get the rents and incomes from all his real estate, until it shall be sold. He includes in the category of real estate, his interests in West Virginia. Until these are sold, the wife is to have the rents and incomes of them. In view of his knowledge of the condition of the land in West Virginia and of the character of its impending development, he must have intended that such income as should accrue, should go to his wife until his interests should be closed out by sale. As the lands were incapable of producing income save by the sale of timber and the leasing of coal rights, the wife was entitled to the income so derived. Any other construction would result in striking from the testator's will the expression of an intent that the wife should receive the usufruct and benefit derived from the West Virginia interests pending their sale. The true intent of the testator is carried out by affirming the decree entered by the court below, which follows (so far as they are applicable) the numerous precedents cited in the report of the auditor.

The judgment is affirmed.